## UNITED STATES OZONE CO. v. UNITED STATES OZONE CO. OF AMERICA.

### Nos. 2910 and 2911.

Court of Customs and Patent Appeals.
June 6, 1932.

Fred Gerlach, of Chicago, Ill., for appellant.

David P. Wolhaupter, of Washington, D. C. (Emory L. Groff, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

These are appeals in trade-mark cancellation proceedings from the decisions of the Commissioner of Patents affirming the decisions of the Examiner of Interferences sustaining appellee's petition for the cancellation of appellant's registration No. 239,333, for the composite trade-mark hereinafter described, and dismissing appellant's petition for the cancellation of registration No. 162,-145, for substantially the same trade-mark.

In cancellation proceeding No. 1834, appeal No. 2910, appellee, United States Ozone Company of America, filed its petition in the United States Patent Office for the cancellation of appellant's registration No. 239,333, issued February 28, 1928, on an application filed June 27, 1927, of a composite trade-mark consisting of a pictorial representation of a shield. There are various symbols on the face of the shield and a dark band running diagonally across the center with the word "Ozone" printed thereon.

In cancellation proceeding No. 1953, appeal No. 2911, appellant, United States Ozone Company, filed its petition for the cancellation of trade-mark registration No. 162,145, issued December 5, 1922, to the United States Ozone Company of Scottdale, Pa., on an application filed April 4, 1921, of the composite mark hereinbefore described, and claimed to be owned by appellee, United States Ozone Company of America, by virtue of an assignment in writing executed and delivered to it on or about March 7, 1928, by the United States Ozone Company of Scottdale.

It is conceded by counsel for the parties that the involved marks are substantially identical, and are used by the parties on goods possessing the same descriptive properties.

It is obvious that the continuation of such joint use would cause confusion in the mind of the public and result in damage to the owner of the trade-mark.

It appears from the record that in December, 1920, the United States Ozone Company of Scottdale was organized and received its certificate of incorporation; that the amount of its capital stock was $5,000, which was divided into fifty shares of the par value of $100; that its incorporators, H. B. Hartman, John M. Stauffer, and F. L. Brown,

each of Scottdale, were the directors and the only subscribers to its capital stock; that 10 per centum of its capital stock, the amount required by the laws of the state of Pennsylvania to be paid before a certificate of incorporation could be granted, to wit, $500, was paid by F. L. Brown to himself as treasurer of the corporation; that, according to the certificate of incorporation, the company was formed for the purpose of "manufacturing, selling and dealing in electrical and mechanical water purifying appliances, and the accessories thereto"; that H. B. Hartman acted as president of the corporation; that the total amount of stock subscribed for was, H. B. Hartman, John M. Stauffer, and F. L. Brown, 1, 2, and 2 shares, respectively; and that, as Hartman and Stauffer never paid for the shares of stock for which they subscribed, no stock of the corporation was ever issued.

The witness Hartman, who testified for appellee, said that the company was organized "to sell the output of the Electric Water Sterilizer & Ozone Company and later to acquire that company."

The witness Brown, who also testified for appellee, said that "it was organized with the sole intention of eventually taking over all of the assets of the Electric Water Sterilizer & Ozone Company."

On April 4, 1921, the United States Ozone Company of Scottdale, by its president, H. B. Hartman, applied for the registration of the involved trade-mark. In its application, it was stated that the applicant had adopted and used the trade-mark in the business of that corporation since December 1, 1920, and that the trade-mark was applied to its goods.

In June, 1922, the United States Ozone Company of Scottdale entered into a written agreement with Montgomery Brothers, a copartnership of San Francisco, Cal. In that agreement it appears that the officials of the United States Ozone Company of Scottdale, by its president, H. B. Hartman, represented that that corporation "manufactures and controls patents for the manufacture of certain apparatus and equipment for the purification of *water*, using the process of Ozone and electrolytic sterilization," and proceeded to attempt to grant unto Montgomery Brothers "the exclusive right, license and privilege, subject to the term hereof, to sell said equipment and any and all improvements thereof for a period of five years with the option of an additional five years," in the following territory: "Washington, Oregon, Utah, Nevada, California, Arizona, and the Hawaiian Islands with the exception of one account, the

Coca-Cola Company in the territory of Hawaii." (Italics ours.)

On the 25th day of October, 1923, an additional agreement was entered into by the same parties. It was therein represented by the officers of the United States Ozone Company of Scottdale that it controlled patents for, and manufactured, certain apparatus and equipment "for the ventilation, reconditioning and purification of *air,* using the process and application of ozone," and attempted to grant unto Montgomery Brothers the exclusive right and privilege to sell such apparatus and equipment in the United States and its provinces. (Italics ours.)

On the 1st day of May, 1924, the same parties entered into another agreement. The United States Ozone Company again represented that it controlled patents for, and manufactured, certain apparatus and equipment "for the purification and sterilization of *water,* using the process of Ozone and Electrolytic Sterilization," and attempted to grant unto Montgomery Brothers the exclusive right and privilege to sell such apparatus and equipment in the United States and its provinces, exclusive of the territory covered by the contract dated June, 1922. (Italics ours.)

In each of those contracts it was agreed that the United States Ozone Company should place its name *"as manufacturer,"* and the name of Montgomery Brothers "as exclusive sales agents" of such manufacturer, on such apparatus and equipment. (Italics ours.)

In the agreements dated October 25, 1923, and May 1, 1924, Montgomery Brothers agreed, among other things, that they would report promptly and fully any information received by them of the infringement of patents, trade-names, and trade-marks of the United States Ozone Company of Scottdale.

Prior to and at the time of the incorporation of the United States Ozone Company of Scottdale, and continuously thereafter, until it went into bankruptcy in October, 1926, the Electric Water Sterilizer & Ozone Company of Scottdale owned and controlled the patents, manufactured the Ozone apparatus and equipment, referred to in those contracts, and carried out all of the obligations assumed therein by the United States Ozone Company of Scottdale.

In November, 1925, the Electric Water Sterilizer & Ozone Company of Scottdale entered into a written agreement, dated May 1, 1925, with the Montgomery Brothers. In that agreement the Electric Water Sterilizer & Ozone Company represented that it was the owner of, and controlled, certain patents "covering Ozone Generating Equipment for water sterilization, commercial and industrial purposes, ventilation, etc., and Electrolytic Water Sterilizers," and granted unto Montgomery Brothers the exclusive right and privilege to sell all "Ozone and Electrolytic Apparatus and Equipment, and any and all improvements, that may be made thereto, or any part thereof," for a period of twenty-five years. That contract, among other things, provided that the Electric Water Sterilizer & Ozone Company of Scottdale should place its name "as manufacturer," and the name of Montgomery Brothers "as general sales agents," on such apparatus and equipment. Montgomery Brothers agreed that they would report promptly and fully any information received by them of any infringement of the patents, trade-names, and *trade-marks* of the *Electric Water Sterilizer & Ozone Company.* The contract was signed on behalf of the Electric Water Sterilizer & Ozone Company by John M. Stauffer, vice president, and F. L. Brown, treasurer.

Although the United States Ozone Company of Scottdale entered into the three written agreements hereinbefore referred to, and represented therein that it controlled the patents for, and was the manufacturer of, Ozone apparatus and equipment, it never, as a matter of fact, had any interest, legal or equitable, in the patents, nor did it, at any time, engage in the manufacture of such apparatus and equipment. The only credible explanation for the 1925 agreement between Montgomery Brothers and the Electric Water Sterilizer & Ozone Company is that given by appellant's witness Fred H. Montgomery, which to some extent was corroborated by the testimony of Frank E. Hartman, another of appellant's witnesses, and also by the surrounding circumstances.

It appears from the testimony of the witness Montgomery that both he and his associates believed, when the three agreements were entered into with the United States Ozone Company of Scottdale, that the latter company was doing business and had authority to enter into those contracts; that, due to the fact that an "invoice came through from the Electric Water Sterilizer & Ozone Company," an explanation was requested by Montgomery Brothers; that the officers of the United States Ozone Company of Scottdale, who were also officers of the Electric Water Sterilizer & Ozone Company, stated that those contracts were entered into by the United States Ozone Company of Scottdale because that company had intended taking

over all of the assets of the Electric Water Sterilizer & Ozone Company. In this connection, the witness Montgomery said: " * * * However, we learned that this was not the true status just prior to the signing of the last agreement, with the Electric Water Sterilizer & Ozone Company, and that we had been tricked into entering into negotiations with a company that was not doing business, was never doing any business, that owned no property, had no bank accounts, and were not in a position to therefore invoice us; and we then demanded that we have a contract made out between the responsible Electric Water Sterilizer & Ozone Company and ourselves, whereby we were to purchase equipment outright from this company and sell same to our customers."

In January, 1926, Montgomery Brothers commenced to transact business in the name of the United States Ozone Company of Chicago with the knowledge and consent of the officers of both the United States Ozone Company of Scottdale and the Electric Water Sterilizer & Ozone Company. Furthermore, although there is no written agreement of record to that effect, it clearly appears that at that time it was understood and agreed that the United States Ozone Company of Chicago might and should use the involved trade-mark.

Two witnesses for appellee stated that permission was granted to Montgomery Brothers to use the name "United States Ozone Company," and also the trade-mark, in their business only until a reorganization, which would involve the three companies, should be perfected.

The witnesses for appellant, on the contrary, testified that the use of the name "United States Ozone Company," and the use of the involved trade-mark, was not intended as a temporary arrangement; that it was fully understood and agreed that the use of the name and the trade-mark should be permanent; that this agreement was entered into for the purpose of aiding in the sale of the products of the Electric Water Sterilizer & Ozone Company; and that, by virtue of such agreement, large sums of money had been expended by appellant in advertising both the name and the involved trade-mark.

It is contended by counsel for appellee that, by the various agreements hereinbefore referred to, Montgomery Brothers and the United States Ozone Company of Chicago were to be considered as sales agents only.

Although there are some expressions in those agreements to that effect, it was expressly provided therein that Montgomery Brothers should not be considered as the agent of either of the other contracting parties. Considering the written agreements in connection with the oral testimony given by all of the witnesses who testified in regard thereto, it appears that, until January, 1926, Montgomery Brothers, and thereafter, until the contract was terminated, the United States Ozone Company of Chicago, purchased outright from the Electric Water Sterilizer & Ozone Company the equipment and apparatus manufactured by it.

It further appears that the United States Ozone Company of Scottdale never issued any stock, and never received any money, except $500, an amount equal to 10 per centum of its capital stock, and the sum of $1 paid to it by appellee for the assignment of trademark registration No. 162,145; that no part of the $501 was ever paid out by the company; that it never paid any salaries, nor employed any one in any capacity; that it never had a bank account, nor owned, nor had any interest in, any property of any description except the $501, and a claimed interest in trade-mark registration No. 162,145; that it had no contracts, written or otherwise, with the Electric Water Sterilizer & Ozone Company for the sale of any of the latter's machinery or equipment; that no director's meetings were ever held; that it never manufactured nor sold any machinery or equipment; and that, as stated by its treasurer, F. L. Brown, in a letter dated November 6, 1925, addressed to Montgomery Brothers, Chicago, Ill., Appellant's Exhibit No. 104, it never had an organized form; "it owns no property; has no debts; has no stock issued, and costs only a nominal sum per year to hold it in its present shape, in the hands of our Attorneys, where it always has been, it is the opinion of the Attorneys, that it is for the best interests of all concerned, to hold it in its present shape; under an agreement on our part, that it shall so remain until the proposed re-organization is completed, at which time it will be disposed of as may appear best, either by turning it over as a part of the papers of the Electric Water Sterilizer & Ozone Company, or by cancellation. We are advised that it is not possible to have taxes or other claims assessed against a charter in connection with which no stock is issued, and in as much as the reports to the departments, state and federal, would show, under oath, that the United States Ozone Company of Pennsylvania, owns no property etc., the complications you have in mind could not possibly arise. The only tax assessed against this U. S. Ozone Charter is five dollars annu-

ally for holding the charter. Our Attorneys agree that the idea of a United States Ozone Company, of Delaware, to act only as a selling organization until the proposed re-organization is complete, is practical. And they think, also, that with fairly high capitalization and with the issuing of only sufficient stock to make the organization legal will be satisfactory; it being understood that the complete re-organization will take place on the basis of the investment each interest has at the time of re-organization."

In view of these facts, how can it be argued that the United States Ozone Company of Scottdale was at any time owner of the involved trade-mark, or that it ever had any right to register the same?

Appellee claims title by an assignment from the United States Ozone Company of Scottdale. No claim is made in the pleadings that appellee received title to the mark, or any interest therein, from or through any other corporation, officers, or persons. Furthermore, two of the witnesses for appellee testified, in substance, that the involved mark was not owned by the Electric Water Sterilizer & Ozone Company, and that that company neither had nor claimed any interest, legal or equitable, in it. There is no evidence to the contrary.

It appears from the testimony that, prior to entering into the contract dated May 1, 1925, with Montgomery Brothers, the Electric Water Sterilizer & Ozone Company actually attached plates to some of its goods bearing the trade-mark and the name of the United States Ozone Company of Scottdale. Obviously, this was done for the purpose of indicating origin or ownership of the goods in the United States Ozone Company of Scottdale. In view of the fact that the latter company had no interest, legal or equitable, in such goods, the placing of such plates thereon amounted to a misrepresentation of the facts.

From January, 1926, until the Electric Water Sterilizer & Ozone Company went into bankruptcy, and thereafter, until the bankrupt estate was sold to E. Ralph Loucks, the involved trade-mark, then admittedly used by appellant, was placed upon the apparatus and equipment by the manufacturers thereof for the express purpose of indicating origin and ownership in the United States Ozone Company of Chicago.

The tribunals of the Patent Office each held that, prior to the execution of the agreement dated May 1, 1925, the United States Ozone Company of Scottdale was acting as sales agent for the Electric Water Sterilizer & Ozone Company. The witnesses for appellee made some general statements to that effect. However, those statements were wholly disproved by the established, if not admitted, fact that the United States Ozone Company of Scottdale never actually engaged in any business.

The function of a trade-mark is to identify the origin or ownership of the goods to which it is attached, and a mark cannot be legally assigned apart from the "business or property in connection with which it has been used." Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 113 F. 468, 475, 51 C. C. A. 302; Mayer Fertilizer & Junk Company v. Virginia-Carolina Chemical Company, 35 App. D. C. 425.

Accordingly, we must hold that the United States Ozone Company of Scottdale was not entitled to the use of the involved mark at the date of its application for registration thereof; that it was not entitled to register it; that it never did use the mark and never was the owner of it; and that its attempted assignment and transfer of registration No. 162,145 did not confer upon appellee ownership of the involved mark.

The next question presented for our consideration is whether appellant, at the time it applied for registration thereof and continuously thereafter, was the owner of the involved mark.

That appellant used the mark on its goods in January, 1926, and continuously thereafter, is not denied. Furthermore, any alleged conditional agreement on the part of the Electric Water Sterilizer & Ozone Company attempting to permit appellant to use the involved mark was without any force and effect, because the Electric Water Sterilizer & Ozone Company never owned the mark and never used it on its goods for the purpose of indicating origin and ownership in it. In view of the fact that, at the time appellant adopted the involved mark, neither the United States Ozone Company of Scottdale nor the Electric Water Sterilizer & Ozone Company owned it, appellant legally adopted it, and, as appellant used the involved mark in interstate commerce continuously thereafter to indicate origin and ownership of its goods, we must hold that it was the owner of the mark at the time it filed its application for registration; that registration No. 239,333 is valid; that appellant is now the owner of the mark; and that registration No. 162,145 should be canceled.

For the reasons stated, the decisions of the commissioner are reversed.

Reversed.