## MONTEVALLO COAL MINING CO. v. LITTLE GEM COAL CO.

### Patent Appeal No. 2650.

Court of Customs and Patent Appeals.
April 15, 1931.

412

H. C. Robb and J. F. Robb, both of Washington, D. C., and V. J. Nesbit and W. H. Sadler, Jr., both of Birmingham, Ala. (Robb & Robb, of Washington, D. C., and Nesbit & Sadler, of Birmingham, Ala., of counsel), for appellant.

Harry H. Semmes, of Washington, D. C., and W. Douglas Arant, of Birmingham, Ala. (Semmes & Semmes, of Washington, D. C., and Bradley, Baldwin, All & White, of Birmingham, Ala., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents affirming a decision of the Examiner of Trade-Mark Interferences, sustaining the opposition of appellee to the registration of the trade-mark "Montevallo" and denying registration thereof.

The application here in issue was filed on February 2, 1927, and is for registration of said mark under the ten-year proviso of the Trade-mark Act of February 20, 1905 (15 USCA § 81 et seq.). In said application appellant declared that the name "Montevallo" was in actual and exclusive use as a trade-mark by it or its predecessors for the ten years next preceding February 20, 1905. Appellant is engaged in mining coal at Aldrich, Ala., from a seam of coal known as the "Montevallo Seam" and selling such coal in several states in the south.

The opposition is based upon the lack of exclusive use by appellant of the word "Montevallo" in connection with coal during said ten-year period, it being alleged that others had used this word during said period to identify coal similar to that produced by appellant. It is further alleged in the notice of opposition that appellee itself was using this word to designate its own coal, such use, however, beginning subsequent to said ten-year period during which time appellant claims to have had exclusive use.

The record shows that on December 4, 1923, the mark here in issue was registered pursuant to an application filed by appellant's predecessor, Montevallo Mining Company. This registration was granted under said Act of February 20, 1905, but not under the ten-year clause thereof which is here involved. Thereafter, appellee herein petitioned for the cancellation of said mark, and on March 10, 1927, the same was canceled after a decision by the District of Columbia Court of Appeals, affirming a decision by the Commissioner of Patents canceling the registration of said mark. Montevallo Mining Co. v. Little Gem Coal Co. et al., 57 App. D. C. 100, 17 F.(2d) 688.

Both parties took testimony, and by stipulation of the parties the record in said cancellation proceeding was made a part of the record herein.

On November 3, 1928, the Acting Examiner of Interferences rendered a decision dismissing the opposition and adjudging that appellant was entitled to registration of the mark applied for.

On November 23 following, appellee filed a motion for a rehearing, which was granted. On February 27, 1929, the Acting Examiner of Interferences rendered a decision sustaining the opposition and adjudging that appellant was not entitled to the registration of the mark for which it had made application. Upon appeal to the Commissioner, said decision of the Acting Examiner of Interferences was affirmed, and from said decision the appeal now before us was taken.

In its brief, and upon oral argument, appellant urged several grounds of reversal, one of which was that error was committed in granting the rehearing above referred to. It is conceded that the motion for rehearing was filed within the time provided for by the rules of the Patent Office, and it was clearly within the discretion of the Acting Examiner of Interferences to grant the motion. In the decision of the Acting Examiner of Trade-Mark Interferences upon which a rehearing was sought, it was stated:

"* * * While opposer's testimony does establish a limited use of the word Montevallo in connection with coal by certain third parties between the years 1895 and 1905 in a manner to suggest to the public that this coal was a product obtained from the vicinity of the Montevallo coal region, it does not appear from this testimony that any trade-mark rights have been claimed by such third parties in the use of this word, nor does it appear that any one except the applicant herein has actually used the word 'Montevallo' as a mark to indicate origin. * * *"

We assume that the word "origin," as there used, was meant to indicate origin in

the producer and not geographical origin. With this construction it is clear that with the facts found the Examiner made an error of law, for as will hereafter appear, if parties other than appellant had used the name "Montevallo" during said ten-year period to suggest to the public that the coal sold by them was a product obtained from the vicinity of the Montevallo coal region, then the opposition should have been sustained.

The Commissioner committed no error in holding that the granting of the motion for rehearing by the Acting Examiner of Trade-Mark Interferences was proper.

Another contention made by appellant is that, unless appellee can show that during said ten-year period it had actual trade-mark use of the name "Montevallo," or a use analogous to trade-mark use, it cannot prevail in this court.

█ Appellant cites no authorities holding that an opposer, in order to prevail in a proceeding of the character before us, must show use by him of the mark, either as a trade-mark, or a use analogous to trade-mark use, prior to February 20, 1905, and we have found no such authorities. On the contrary, the rule seems to be established that in a trade-mark case in which opposition to registration is made on the ground that the applicant was not the exclusive user of the mark for ten years prior to February 20, 1905, he, the applicant, must show exclusive use during said ten-year period. C. A. Gambrill Manufacturing Co. v. Waggoner-Gates Milling Co., 38 App. D. C. 532; Worster Brewing Corporation v. Rueter & Co., 30 App. D. C. 428. In the case last cited it was held that "an actual use must be shown to have been possessed and enjoyed by the applicant to the sole exclusion of *all others*." (Italics ours.)

In the case of William Wrigley, Jr., & Co. v. Norris, 34 App. D. C. 138, which involved an opposition to registration under said ten-year clause, it was held, quoting from the syllabus:

"Where an application for registration of a trademark is regular in form, the applicant is entitled to registration unless his prima facie case is overcome by the evidence on behalf of one opposing the granting of the application, in which event it is incumbent on the applicant to establish his right to registration by a fair preponderance of testimony."

█ It was incumbent upon appellee to allege and show an interest in the subject-matter of appellant's application from which damage may be inferred. McIlhenny's Son v. New Iberia Extract of Tobasco Pepper Co., Limited, 30 App. D. C. 337; California Cyanide Co. v. American Cyanamid Co., 40 F.(2d) 1003, 17 C. C. P. A. 1198. This appellee has done; it has shown a use of the mark here in question at the time of the filing of appellant's application, inconsistent with a trade-mark use of the same by appellant, and it was not necessary for it to show such use by it during the ten-year period preceding February 20, 1905. Appellee was entitled to show, if it could, that said mark was not in actual and exclusive use as a trade-mark by appellant or its predecessors during the ten years next preceding February 20, 1905, and, under the decisions heretofore cited, it was necessary only that appellee overcome the prima facie case, arising from appellant's sworn application, that such mark was so used by it. If such prima facie case was rebutted, the burden was upon appellant to establish by a preponderance of the evidence such exclusive use.

This brings us to a consideration of the evidence found in the record upon the question of such use. The record is voluminous, comprising nearly one thousand pages, and no useful purpose would be served by reviewing it in detail.

It appears that in 1823 there was laid out in the state of Alabama a town to which was given the name of Montevallo. Later on, the valley in which the town is situated was known as the Montevallo Valley. Still later, coal was discovered in the neighborhood, and when mined, was shipped from the railroad station at Montevallo. Later, a particular seam of coal, from which both parties herein produce their coal, came to be known as the Montevallo seam, which seam extends through the properties of appellant and appellee and the properties of other parties not connected with this proceeding.

For a number of years appellee has sold its coal under the name of "Montevallo" or "Dogwood Montevallo" coal, but there is no evidence that it or its predecessors were so selling coal prior to February 20, 1905. The testimony introduced by appellee, we think, prima facie established that, during said ten-year period, parties other than appellant sold coal produced from said seam under the name of Montevallo, or under such name coupled with another word, but in a way that would be in conflict with appellant's trade-mark "Montevallo" if it had been a technical trade-mark. If there be any doubt as to this being the proper conclusion from the testimony introduced by appellee, such doubt is removed by the testimony of some of appellant's witnesses.

IJ. A. Thomas, president of the appellant company, testified upon cross-examination as follows:

"Q. You wouldn't testify, would you, that no company other than the company at Aldrich had not sold any coal as Montevallo during the period, say eleven years prior to February, 1905? A. No, I would not.

"Q. In fact, you do know that Mr. Hendrix during that period sold coal and called it Dogwood Montevallo, or Montevallo Dogwood? A. Yes."

C. P. Anderson, a witness on behalf of appellant, testified upon cross-examination as follows:

"Q. Now, you testified in this cancellation proceeding when the Little Gem Coal Company brought the proceeding against Montevallo Coal Company to cancel the trade mark 'Montevallo,' didn't you? A. Yes.

"Q. I am looking at page 379 of the record of the Court of Appeals of the District of Columbia, which shows your testimony, beginning at page 428, and indicates on page 379 that testimony was taken on August 25, 1924. On page 44 this question was asked, 'Q. 153. Go ahead and finish your answer and then I'll ask you another question. A. 153. Something like 20 or 25 years ago, as I stated, Mr. L. W. Hunter, who was living in Montgomery, got into the coal business, and Dogwood not being far from the Town of Montevallo, he advertised Montevallo coal. At that time I took it up with Mr. Smith. That was before Molton Smith had anything to do with Dogwood. He had a retail yard in Montgomery. He advertised it that way but they soon stopped him.' That is correct? A. Yes.

"Q. In other words, that testimony was in 1924, and it was 20 or 25 years before that this man Hunter was selling his coal as Montevallo, back prior to 1905? A. Yes.

"Q. That is your best recollection? A. Yes."

The witness further testified on re-direct examination as follows:

"Q. He asked you about a man named Hunter advertising coal as Montevallo coal. Hunter was a local dealer in Montgomery, wasn't he? A. Yes.

"Q. And he did that a short time and you say he was stopped? A. I don't remember whether he was stopped or not. He didn't stay in business but about a year and a half; I am sure not over two years.

"Q. What Mr. Smith did you take it up with? A. I don't know unless it was the State Geologist. He is the only one I know of, over at the State University.

"Q. And some time following some objection from you, the man either went out of the business, or stopped advertising his coal as Montevallo coal? A. Yes. He was a farmer and came in and went into the coal business, and lost what he had in it."

On recross examination, the witness further testified as follows:

"Q. The controversy you were having with him was about the name 'Montevallo'? A. Yes.

"Q. He was using it and you were objecting? A. Yes.

"Q. And he wasn't selling coal from Aldrich? A. No.

"Q. What year was that, 25 to 30 years ago? A. I don't remember the year.

"Q. That was in the town of Montgomery? A. Yes, Montgomery."

Appellant complains that appellee has furnished no documentary evidence in support of its allegations that appellant did not have the actual and exclusive use of said mark during said ten-year period. There is found in the evidence introduced by appellee a letterhead which the witness Duncan, testifying on behalf of appellee, testified was from a letter written to him in 1901 by a Mr. Simmons, connected with the Montevallo-Dogwood Coal Company, not a predecessor of appellant. This letterhead contains, below the name of the company, the following: "The Celebrated Montevallo Red Ash Coal."

We would observe, in this connection, that appellant waited for more than twenty years before seeking registration under said ten-year clause of the Trade-Mark Act. This, of course, it had a right to do, but documentary evidence of happenings twenty years before the time of trial is naturally much more difficult to secure than if so long a period had not intervened.

We are in accord with the findings of the Patent Office tribunals that appellant did not have the exclusive use as a trade-mark of the word "Montevallo" during the ten years immediately preceding February 20, 1905.

But one question remains to be considered, and that is appellant's contention that the Commissioner erred in refusing to consider the alleged unfair trade practice of appellee following the cancellation proceeding.

This charge that appellee comes into this proceeding with unclean hands is based upon an advertisement which it caused to be inserted in the Birmingham Age-Herald fol-

lowing the cancellation of appellant's mark by the Commissioner of Patents in the cancellation proceeding hereinbefore referred to. We have carefully examined such advertisement and find no material misrepresentation of facts therein. In view of the previous representations of appellant as to its exclusive right to the mark, disclosed by the record, we think appellee had the right to advertise the fact that appellant's mark had been canceled. We do not believe there is anything in said advertisement to convey the impression that appellee was claiming the exclusive right to the use of the word "Montevallo" upon coal which it mined from the Montevallo seam, but only that it had an equal right with others so mining coal to use the word "Montevallo" as indicating the geographical origin of the coal.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

BLAND, Associate Judge, concurs in the conclusion.