44 C.C.P.A. (Patents).

**Ernest WILSON, Appellant,**

v.

**Arthur J. DELAUNAY, Appellee.**

**Patent Appeal No. 6279.**

United States Court of Customs
and Patent Appeals.
June 25, 1957.

Carl Hoppe, San Francisco, Cal., for appellant.

James Atkins, Washington, D. C. (Russell L. Law, Washington, D. C., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, RICH, and JACKSON (retired), Judges.

JOHNSON, Chief Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents (107 U.S.P.Q. 148), acting for the Commissioner, affirming the decision of the Examiner of Interferences in a trademark opposition proceeding instituted by appellee Arthur J. Delaunay against an application by appellant Ernest Wilson for registration of the word "Zombie" as a trademark for candy. The opposition was based on alleged prior trademark use by appellee of the word "Zombies." In his answer to the notice of opposition appellant included a counterclaim praying that appellee be refused a registration of the mark involved.

Both the Examiner of Interferences and the Assistant Commissioner held that appellee's use of "Zombies" preceded appellant's use of "Zombie," and that the concurrent use of those marks on the goods of the respective parties would be likely to cause confusion. They accordingly sustained the opposition and dismissed appellant's counterclaim.

We find the following statement by the Assistant Commissioner as to appellee's use of the trademark "Zombies" to be supported by the record:

"Opposer's record shows that in the fall of 1945 he commenced the manufacture of a candy-like confection in the nature of a macaroon without flour or shortening,[2] and sold it in Pennsylvania, Maryland and New Jersey through the stores of Candy Makers, Inc. In February of 1946, Candy Makers, Inc., manufactured the confection for opposer and sold it under the 'Zombies' mark under an agreement with opposer; and this arrangement continued until December of 1947 shortly before Candy Makers, Inc., was declared a bankrupt. In December of 1947, opposer entered into an agreement with Deer Park Baking Company for the manufacture of the 'Zombies' confection; and production commenced in March of 1948. Under this agreement, Deer Park Baking Company manufactured and distributed the confection and furnished to opposer a statement of sales under the mark, together with information concerning the places of sale, for purposes of computing 'royalties' due to opposer. In September of 1949, the method of billing and accounting as between opposer and Deer Park Baking Company was changed; and opposer, under the revised system, received the 'Zombies' customer list from Deer Park Baking Company, Deer Park manufactured the product, charged it to Zombies Company (opposer's trade name), and opposer thereafter billed the customers himself. This arrangement was continuing at the time opposer's testimony was taken in 1953."

2. The labels used prior to February of 1946 show "Mary Lee Zombies" and the statement of ingredients included cake flour.

The record also shows continuous use of "Zombie" and "Zombies" by appellant, beginning in July 1948, as a trademark on a confection consisting of a chocolate cream candy dipped in chocolate and sprinkled with chocolate covered nut meat, chocolate chips, chocolate decorets or chocolate covered cocoanut.

It is evident that there is no material difference, in a trademark sense, between the singular and plural forms of the word "Zombie" and they will therefore be regarded here as the same mark.

As above indicated, the record shows continuous use of "Zombies" as a trademark by appellee and/or others with his knowledge and consent and in a manner inuring to his benefit, beginning considerably prior to appellant's earliest date of use of that mark. Appellant argues, however, that appellee is not entitled to maintain the opposition for the reason that, at the time when the mark was adopted by appellant, appellee was not using it himself and had no control over the use of it by his licensee.

It is to be noted that the instant proceeding is an opposition and that accord-

ingly the issue is not whether appellee (the opposer) owns the mark in issue or is entitled to register it, but whether it is likely that he would be damaged if a registration of the mark were granted to appellant. Since appellee has been continuously deriving revenue from the use of the mark on confections since a time prior to its adoption by appellant, it is evident that the registration of the mark to appellant for the same or closely related goods would be likely to damage him. As was pointed out by the Examiner of Interferences, it is well settled that an opposer need not have exclusive rights in a mark in order to oppose its registration to another. Otard, Inc., v. Italian Swiss Colony, 141 F.2d 706, 31 C.C.P.A., Patents, 955; California Piece Dye Works v. California Hand Prints, Inc., 159 F.2d 871, 34 C.C.P.A., Patents, 907, and cases there cited. It is only necessary that the opposer establish that he would probably be damaged by the registration of an applicant's mark. California Cyanide Co. v. American Cyanamid Co., 40 F.2d 1003, 17 C.C.P.A., Patents, 1198.

It is to be noted moreover that, although the exact terms of the agreements between appellee and his licensees are not shown by the record, it is clear that such licensees accounted to appellee and paid him royalties for the use of the mark "Zombies." Evidently, therefore, appellee was regarded as the owner of the mark whether or not he controlled the exact manner in which it was used or the composition of the products to which it was applied. The instant case is thus clearly distinguishable from United States Ozone Co. v. U. S. Ozone Co. of America, 58 F.2d 1051, 19 C.C.P.A., Patents, 1256 relied on by appellant, in which the court found that appellee "never did use the mark and never was the owner of it," and is similarly distinguishable from such cases as Revere Paint Co. v. Twentieth Century Chemical Co., 150 F.2d 135, 32 C.C.P.A., Patents, 1096, in which the opposer received no compensation for the use of the mark by an alleged agent.

Since appellee has established his right to maintain the instant opposition proceeding, it remains to be decided whether appellant's mark was properly refused registration.

We agree with the Patent Office tribunals that the goods of the respective parties are of such a nature that the application to them of substantially the same mark by different parties would be likely to lead to confusion. While there may be room for argument as to whether appellee's product is a cake or a candy, it is clearly so similar in nature to appellant's product that the purchasing public, seeing the same mark applied to the two, might logically conclude that they emanated from the same source.

The fact that there is no evidence of actual confusion is a factor which may be considered in determining whether confusion is likely, but it is not controlling. Auburn Rubber Corporation v. Hanover Rubber Company, 107 F.2d 588, 27 C.C.P.A., Patents, 743; Suzuki & Co. of New York, Ltd. v. Maggi Co., Inc., 117 F.2d 562, 28 C.C.P.A., Patents, 928, and cases there cited. Under the circumstances here involved, we do not think that the lack of such evidence is sufficient to justify a holding that confusion would not be likely.

As has heretofore been stated, appellee's proofs establish continuous use by him or on his behalf of the mark "Zombies" as a trademark for a confection, beginning prior to appellant's date of first use and extending at least up to the taking of appellee's testimony in 1953. In view of this use, and irrespective of what rights appellee may or may not have had by virtue of the license agreements, it is clear that appellant is not entitled to registration of its mark inasmuch as it did not have, at the time it adopted and first used it, and in fact, never had the exclusive right to use the mark in commerce. Cf. Montevallo Coal Mining Co. v. Little Gem Coal Co., 48 F.2d 411, 18 C.C.P.A., Patents, 1195. Cf. also Dubonnet Wine Corp. v. Ben-Burk, Inc., 121 F.2d 508, 28 C.C. P.A., Patents, 1298.

■ Appellant argues at some length that the Patent Office tribunals erred in application of the burden of proof, but we can discover no such error. The burden of proof was, of course, on the opposer (appellee), but, for the reasons above set forth, we find that it has been sustained by proper evidence and that the opposition was, therefore, properly sustained.

As above noted, appellant's answer to the opposition included a counterclaim praying that appellee be denied registration of "Zombies" as a trademark. The Examiner of Interferences dismissed the counterclaim on the ground that "it has not sufficiently been made to appear that the opposer has filed an application for registration of its mark" and on the further ground that, in any event, opposer's right to register the mark could be challenged only in an opposition proceeding brought about in the manner required by Section 13 of the Trademark Act of 1946 [15 U.S.C.A. § 1063]. The Assistant Commissioner dismissed the counterclaim "as premature and as not stating a cause of action in view of opposer's proved earlier and continued use."

From the foregoing it would appear that neither the Examiner of Interferences nor the Assistant Commissioner took cognizance of the fact that appellee had filed an application to register "Zombies" as a trademark for candy; as is agreed by the parties, however, such an application was filed and was published for opposition on the same day and on the same page of the Official Gazette of the Patent Office as appellant's mark here involved. So far as the record shows, appellant did not institute an opposition proceeding against appellee's application within the time provided by law for taking such action and the counterclaim was filed after the expiration of the time allowed for commencing such a proceeding.

Appellant contends that his counterclaim was proper in view of Patent Office Rule 23.1, in effect at the time the opposition was brought, which provides that:

"Except as otherwise provided, procedure and practice in contested or inter partes proceedings shall be governed by the Rules of Civil Procedure for the District Courts of the United States wherever considered applicable and appropriate."

■ However, as noted by appellee, opposition to an application for registration is definitely "otherwise provided" for by Section 13 of the Trademark Act. Congress having specifically provided for the time within which an opposition to the granting of a registration may be filed, it would not be proper to construe a rule of the Patent Office to permit, in effect the commencement of an opposition at a later time. It follows that the dismissal of appellant's counterclaim was proper.

The decision of the Assistant Commissioner is affirmed.

Affirmed.

WORLEY, J., because of illness, was not present at the argument of this case, but, by agreement of counsel, participated in this decision.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.