THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: September 10, 2015

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

Swiss Grill Ltd., John Hartwig, Christopher Hartwig and Matthew Hartwig

v.

Wolf Steel Ltd.

___

Opposition No. 91206859
to Application Serial No. 85336644

_____

Gerald D. Silver and Kimberly B. Herman of Sullivan & Worcester LLP for Swiss Grill Ltd., John Hartwig, Christopher Hartwig and Matthew Hartwig.

Michael D. Fishman, Barbara L. Mandell, Linda Monge Callaghan, Michelle L. Visser and Krista M. Hosmer of Rader, Fishman & Grauer PLLC for Wolf Steel Ltd.

_____

Before Zervas, Wellington and Adlin, Administrative Trademark Judges.

Opinion by Adlin, Administrative Trademark Judge:

Wolf Steel Ltd. ("Applicant") seeks registration of the mark SWISS GRILLS, in standard characters and with GRILLS disclaimed, for "Barbeques and outdoor

grills."[1] In their notice of opposition, Swiss Grill Ltd., John Hartwig, Christopher Hartwig and Matthew Hartwig (collectively "Opposers") allege prior rights through "pre-sales activities," as further discussed, *infra*, of the mark shown below



for barbeques, outdoor grills and related products and services. As grounds for opposition, Opposers allege that use of Applicant's mark would be likely to cause confusion with Opposers' mark, and that Applicant did not have a bona fide intent to use its mark on the identified goods at the time it filed the involved application.[2] In its Answer, at Paragraph 22, Applicant admits that the parties' marks so resemble each other "as to be likely to cause confusion, to cause mistake, or to deceive," but denies the remaining allegations in the notice of opposition.[3] We sustain the opposition on both grounds.

## The Record

Pursuant to the parties' July 7, 2014 Stipulation to Elect the Accelerated Case Resolution ["ACR"] Procedure, which the Board approved in its order of August 5,

---

[1] Application Serial No. 85336644, filed June 2, 2011 based on an alleged intent to use the mark in commerce under Section 1(b) of the Trademark Act.

[2] The notice of opposition also included a dilution claim which was dismissed by the Board's order of June 17, 2013.

[3] Applicant also asserted several "affirmative defenses," some of which are in fact merely amplifications of its denials, and others of which it failed to pursue or prove at trial and which are accordingly waived. *Miller v. Miller*, 105 USPQ2d 1615, 1616 n.3 (TTAB 2013); *Baroness Small Estates Inc. v. American Wine Trade Inc.*, 104 USPQ2d 1224, 1225 n.2 (TTAB 2012).

2014, testimony was presented by declaration and "[d]iscovery responses and documents produced in discovery may be submitted as exhibits without the need for accompanying testimony."[4] Thus, the record consists of the pleadings, the file of the involved application, and the following:

> Opposers' Declaration of Chris Hartwig, Swiss Grill's Sales and Marketing Officer, and the Exhibits thereto ("Hartwig Dec.," TTABVue Dkt. # 32).

> Applicant's Declaration of Wolfgang Schroeter, its Chief Executive Officer, and the Exhibits thereto ("Schroeter Dec.," TTABVue Dkt. # 30).

> Applicant's Declaration of Steven H. Leach, a Canadian attorney ("Leach Dec.," TTABVue Dkt. # 30).[5]

> Opposers' Reply Declaration of Chris Hartwig and the Exhibits thereto ("Hartwig Reply Dec.," TTABVue Dkt. # 37).

> Opposers' Reply Declaration of Ken Warren, Owner of Warren Marketing Group ("Warren Reply Dec.," TTABVue Dkt. # 37).

## Relevant Facts and History

Opposers and Applicant are former business partners, both based outside the United States, each of which manufactures and sells outdoor grills. Hartwig Dec. ¶¶

---

[4] In any event, the parties introduced most of the documents in the record through witness declarations.

[5] Opposers' objection to Mr. Leach's testimony, because Applicant "did not identify [him] as a witness with knowledge in its Responses to Interrogatories," Opposers' Reply Brief at 4, is overruled. Applicant was not obligated to identify all trial witnesses when it served its answers to Opposers' interrogatories. While parties are obligated to identify trial witnesses in their pretrial disclosures, there is no indication in the record that either party served pretrial disclosures in this ACR case (and the parties' ACR Stipulation does not provide for the exchange of pretrial disclosures). As Opposers have not demonstrated that Applicant served pretrial disclosures which failed to identify Mr. Leach, or provided any other basis for striking his testimony, we have considered his declaration.

6, 8 and Exs. B, D. Applicant, a Canadian company, describes itself on its website as "North America's largest privately owned manufacturer of quality wood and gas fireplaces (inserts and stoves), gourmet gas and charcoal grills, outdoor living products and heating and cooling products." *Id.* ¶ 8 and Ex. D. Applicant has been selling barbeques and outdoor grills under its NAPOLEON trademark for over 30 years, in the United States and other countries. *Id.* ¶ 8 and Ex. E.

Opposer Swiss Grill Ltd. is a United Kingdom-based company which since 2009 "has been manufacturing and selling high quality, state-of-the art, stainless steel barbeques and outdoor grills using [its] SWISS GRILL trademark" outside of the United States, including in Europe. Prior to the commencement of the opposition on August 24, 2012, as further discussed *infra,* Swiss Grill began selling its SWISS GRILL barbeques and outdoor grills in the United States. *Id.* ¶ 6 and Ex. B. Opposers John, Christopher and Matthew Hartwig operate Swiss Grill Ltd. and are Swiss nationals. *Id.*

Before the Hartwigs developed their SWISS GRILL barbeques they, through their nonparty company Bravo, were Applicant's United Kingdom distributor of NAPOLEON grills, but eventually the Hartwigs and Applicant had a falling out. According to Opposers, Applicant "began raising the supply prices of NAPOLEON barbeques, effectively squeezing Bravo, as distributor, out of the market." *Id.* ¶¶ 9-10. According to Applicant, it paid for Opposers' booth at a United Kingdom trade show in 2009, and expected, "as had been the standard practice for many years, the Hartwigs were going to display Applicant's NAPOLEON barbeques/outdoor grills,"

4

but instead "SWISS GRILL products, logos and promotional materials consumed approximately 95% of the booth space, with **one** NAPOLEON barbeque/outdoor grill appearing in the back corner of the booth." Schroeter Dec. ¶¶ 9, 11.

The parties also dispute what Mr. Schroeter said to the Hartwigs during the 2009 trade show. According to Opposers, Mr. Schroeter "angrily responded by telling us, in words or substance: 'You are making a mistake. I am bigger than you are, I am stronger than you are, and I will make sure you do not succeed.'" Hartwig Dec. ¶ 13. According to Applicant, Mr. Schroeter was "disappointed," but merely told the Hartwigs they were "making a mistake," and Mr. Schroeter testified that "**never once** did I threaten the Hartwigs, and I surely **never** stated: 'I am bigger than you are, I am stronger than you are, and I will make sure you do not succeed.'" Schroeter Dec. ¶ 13. Applicant further claims that it terminated the parties' relationship when Opposers stopped paying Applicant, and that Applicant, apparently through Napoleon Appliance Corporation, obtained a monetary judgment of £94,971.50 against the Hartwigs' distribution company Petersfield Services, Ltd., which remains unpaid. *Id.* ¶ 18 and Ex. 2.

In any event, there is no dispute that approximately two weeks after Applicant, apparently via the trade show, became aware of Opposers' use of the mark SWISS GRILL in Europe, it filed its own UK application to register the mark SWISS GRILL<u>S</u> for goods and services in International Classes 11 and 35. Hartwig Dec. ¶¶ 13-14 and Ex. O; Applicant's Summary Bench Trial Memorandum of Law in Support of Dismissing this Opposition ("Applicant's ACR Brief", TTABVue Dkt. #25

(confidential), #32 (public, redacted)) at 18. On November 27, 2009, Opposers' United Kingdom counsel sent a letter informing Applicant of Opposers' prior Community Trademark application for Opposers' SWISS GRILL & Design mark, and demanding that Applicant withdraw its United Kingdom application or transfer it to Opposers and provide a "written undertaking" that it "will not use or apply to register the trade mark 'SWISS GRILL' or any colourably or confusingly similar mark, in the UK or anywhere else." Hartwig Dec. ¶ 15 and Ex. F. Shortly thereafter, Applicant withdrew its United Kingdom application, and informed Opposers, through counsel, that it did "not see any need for a formal written undertaking." *Id.* ¶ 16 and Ex. G.

The conflict then moved from Europe to the United States. Specifically, in January 2010, Opposers "began discussions with Ken Warren … of Warren Marketing in Hendersonville, North Carolina, including concerning the prospect of Warren performing marketing and distribution for Swiss Grill in the United States." *Id.* ¶ 17 and Ex. H. In July 2010, Opposers "sent sample SWISS GRILL barbeques to Warren for him to market the grills to key customers," and Opposers and Warren began planning appearances at trade shows in the United States. *Id.* ¶¶ 18, 19 and Exs. I, K. Then, in November 2010

> Swiss Grill agreed with Warren to sell approximately $120,000 worth of new sample SWISS GRILL barbeques to Warren. Warren would use the samples to build interest in the SWISS GRILL brand. Warren agreed to pay for the samples via 2% of his commissions earned off future sales. In particular, we agreed that instead of paying Warren his customary 12% commission, we would only pay him a 10% commission until the samples were

6

paid off … The samples were delivered to Warren in December 2010.

*Id.* ¶ 20 and Ex. M. The invoice reflecting this shipment is reproduced below:

SWISS GRILL LTD
OLD FARM
CHALTON
HAMPSHIRE
UK, PO8 0BG

**INVOICE**

WARREN MARKETING GROUP
1215 Greenville Hwy
Hendersonville, NC 28792
P.888-297-0238
F. 828-698-9753
C. 828-243-3350

| | **Invoice #** | 0001996 |
| --- | --- | --- |
| | **Invoice Date** | 12/02/2010 |
| | **Due Date** | 12/28/2012 |

| Item | Description | Unit Price | Quantity | Amount |
| --- | --- | --- | --- | --- |
| Product | I-500TS GAS BBQ | 260.00 | 24.00 | 6,240.00 |
| Product | A-200 | 280.00 | 24.00 | 6,720.00 |
| Product | A250B | 339.00 | 24.00 | 8,136.00 |
| Product | BI650 | 428.00 | 24.00 | 10,272.00 |
| Product | MS-SINK | 195.00 | 24.00 | 4,680.00 |
| Product | MS-CABINET | 117.00 | 24.00 | 2,808.00 |
| Product | MS-DRAWER | 142.00 | 24.00 | 3,408.00 |
| Product | MS-SIDE BURNER | 168.00 | 24.00 | 4,032.00 |
| Product | MS-CORNER | 42.00 | 24.00 | 1,008.00 |
| Product | Z460D | 563.00 | 24.00 | 13,512.00 |
| Product | Z460 | 456.00 | 24.00 | 10,944.00 |
| Product | Z650 | 578.00 | 24.00 | 13,872.00 |
| Product | FULL KITCHEN | 1100.57 | 34.00 | 37,419.38 |

NOTES: Invoice is payable via commission. Swiss Grill will automatically take 2% of the 12% commission agreed with Warren Marketing until such time as the invoice is paid. If invoice is not paid in full by 12/28/2012 remaining balance must be cleared in full. Invoice has been charged at manufacturing cost price as the goods are samples.

Confidential                                                                 SG0000061

| Subtotal | 123,051.38 |
| --- | --- |
| Total | 123,051.38 |
| Amount Paid | 0.00 |

*Id.* ¶ 21 and Ex. N; *see also,* Hartwig Reply Dec. ¶¶ 3-5 ("all of the barbecues that we shipped and sold to Warren in 2010 featured our SWISS GRILL trademark, name and logo stenciled or imprinted prominently on the grills themselves, on the front of the top lid of the barbeques"); Warren Reply Dec. ¶ 13.

"Since 2010, Swiss Grill has continued to work with Warren, and, since January 2011, Warren's company Repcorps, to sell our barbeques and grills to distributors and dealers. Warren and Repcorps often provide banner stands, countercards, catalogs, floor stand displays and other point-of-purchase materials." Hartwig Dec. ¶ 23. "Swiss Grill has no ownership interest in Warren's company or business. Swiss Grill and Warren were and are in a truly arms-length business relationship, whereby Swiss Grill charges Warren for grills, Warren sells grills to other distributors, retailers and/or customers, and Warren pays Swiss Grill for such grills." Hartwig Reply Dec. ¶ 6; Warren Reply Dec. ¶¶ 7 ("In November 2010, I agreed to purchase approximately $120,000 worth of new sample SWISS GRILL barbecues.") and 14. Swiss Grill joined the Hearth, Patio and Barbecue Association ("HPBA") in the United States in May 2011, and "believes" that its membership status was "immediately made public." *Id.* ¶ 24.

Applicant filed its involved application the following month, in June 2011, and admits that at the time, it was aware of Opposers' use of SWISS GRILL outside the United States. *Id.* Ex. U (Responses to Interrogatories Nos. 1 and 5 and Requests for Admission Nos. 1, 2, 6 and 11). Prior to doing so, Applicant's attorney Mr. Leach "conducted an availability search for the SWISS GRILLS trademark in the United States at Applicant's request and verified the registrability of Applicant's SWISS GRILLS trademark in the United States for 'barbecues and outdoor grills.'" Leach

Dec. ¶ 2. Mr. Leach did not further describe, and Applicant did not produce the results of, the availability search.[6]

On December 19, 2012, Opposer Swiss Grill filed its own United States application Serial No. 85807126 to register SWISS GRILL, in standard characters and with GRILL disclaimed, for "barbeques and outdoor grills," based on first use dates of July 2010; the application is currently suspended pending a decision in this proceeding. *Id.* ¶ 28 and Exs. Q, R.[7] "Swiss Grill and Warren appeared at the HPBA Expo in Atlanta, GA in 2012 as planned," and there Swiss Grill accepted "$1.3 million in U.S. orders" for SWISS GRILL barbeques and outdoor grills. *Id.* ¶ 27. To date, "Swiss Grill has sold in excess of 15,000 SWISS GRILL barbeques and outdoor grills in the U.S., with revenues in excess of $3 million." *Id.*; Warren Reply Dec. ¶ 11.

## Discovery Requests and Responses

During discovery, Opposers served a number of written discovery requests seeking documents relating to, or other evidence of, Applicant's bona fide intention to use its mark for barbeques and outdoor grills at the time it filed its involved

---

[6] Therefore, it is not clear whether Mr. Leach searched registered marks, pending applications or common law uses of similar marks. However, in its Supplemental Response to Opposers' First Requests for Production No. 12, served in September 2013, more than two years after Mr. Leach's search, Applicant claimed that it "is presently unaware of any" documents "relating to any attempts by [Applicant] to ascertain the status, validity, use, or existence of any trademarks held by [Opposers]." Furthermore, although Opposers requested that Applicant produce documents related to Opposers and Opposers' use of the SWISS GRILL mark, and Applicant promised to "produce relevant, responsive, non-privileged documents, to the extent such documents exist," it does not appear that Applicant produced any responsive documents.

[7] It also appears that on November 20, 2012 Chris Hartwig filed United States application Serial No. 79129568 for the SWISS GRILL & Design mark. Hartwig Dec. Ex. Q.

application. Applicant produced a total of 17 pages of documents during discovery, later supplemented with an additional 37 pages, and confirmed that it had no additional responsive documents. Hartwig Dec. Exs. T (September 11, 2013 letter from Applicant's counsel to Opposers' counsel stating "the enclosed documents are the only relevant ones found by our client") and V; Schroeter Dec. Ex. 1. The parties each introduced some of the documents Applicant produced, through witness declarations. None of the documents Applicant produced predate the filing of the involved application.

Document Nos. WSL00001-WSL00002 consist of undated printouts in German depicting cooking products offered by what appears to be a nonparty Swiss company; there is no reference to Applicant or its mark. Document Nos. WSL00003-WSL00004 consist of November 22, 2012 printouts in German from the website "legrill.ch," depicting cooking products, but not referencing Applicant or its mark. Document Nos. WSL00005-WSL00010 consist of a November 22, 2012 printout from "translate.googleusercontent.com," which appears to be an English translation of the "barbecueshop.ch" website, and which does not reference Applicant or its mark. Document No. WSL00011 consists of an undated printout in German from the "huberweinfelden.ch" website which does not reference Applicant or its mark. Document Nos. WSL00012-WSL00017 consist of undated photographs of outdoor barbeque grills Applicant sold in Canada bearing the mark SWISS GRILL, rather than the applied-for mark SWISS GRILLS. Hartwig Dec. Ex. T; Applicant's ACR Brief at 4, 8-9 ("they are pictures of the barbecues/outdoor grills that Applicant

offered for sale in Canada under its SWISS GRILLS (sic) trademark"). Document Nos. WSL00018-WSL00022 consist of copies of Mr. Schroeter's badge and photographs from the 2012 Canton [China] Import and Export Fair which do not reference Applicant or its mark. Schroeter Dec. ¶¶ 7, 8 and Ex. 1. Document No. WSL00023-WSL00049 is a copy of a brochure that Mr. Schroeter obtained from a vendor at the Canton Fair depicting outdoor grills but not referencing Applicant or its mark. *Id.* Document Nos. WSL00050-WSL00053 consist of an e-mail which predates Applicant's filing date by well over three years, and promotional materials, all of which relates to outdoor barbeque grills but do not mention Applicant or its mark. *Id.* Document No. WSL00054 is a copy of the judgment of the Birmingham County Court which Napoleon Appliance Corp. obtained against Petersfield Services Limited. *Id.*[8]

Interrogatory No. 1 of Opposers' First Set of Interrogatories requested that Applicant "[d]escribe any facts relating to any intent of [Applicant] to use the Swiss Grills name …." *Id.* Ex. S. Applicant initially responded by: (1) indicating that it "has not yet marketed, advertised, manufactured, promoted or offered for sale or sold any products in association with the mark SWISS GRILLS in the United

---

[8] Opposers have objected to Document Nos. WSL00018-WSL00054, filed as exhibits to Applicant's declaration of Mr. Schroeter, because they were not produced until after trial, meaning after Opposers filed their opening brief and supporting materials. The objection is overruled. Opposers have not indicated to which specific discovery requests they believe the documents are responsive, and for the reasons set forth below, in our view these documents do not appear responsive to Opposers' discovery requests. Furthermore, Applicant produced these documents during the equivalent of its testimony period pursuant to the parties' ACR Stipulation, and the cover letter accompanying the documents indicates that they were only "recently discovered," and that "they are not business records and so were not uncovered in … previous searches." Schroeter Dec. Ex. 1.

States;" (2) pointing to its Canadian applications to register SWISS GRILLS marks, its sales of outdoor grills under the "SWISS GRILLS" mark (in fact under the SWISS GRILL mark) in Canada and its "availability search to ascertain the registrability of the mark in the United States;" (3) asserting its original and continuing "bona fide intent to use the SWISS GRILLS trademark in the U.S."; and (4) claiming that the "barbecues and outdoor grills" covered by its involved application "are goods within Applicant's core field of business, *and are two of Applicant's primary goods that it sells under several different trademarks." Id.* (emphasis added).

However, Applicant later served "supplemental" responses to the Interrogatories, which are more accurately characterized as "revised" than "supplemental."[9] Indeed, while the key portions of the "supplemental" responses are conveniently and dubiously identified as "Confidential," and therefore will only be discussed generally here, they constitute a substantively different response. Specifically, in Applicant's "supplemental" response to Interrogatory No. 1, and in contrast to its original response, Applicant no longer claims that it intended to sell the "barbeques and outdoor grills" which are within its "core field of business," but instead that it intended to import a "specialty" product which is popular in Europe "as an expansion of its current product line." *Id.* Ex. T. Applicant further claims in its "supplemental" response to Interrogatory No. 1, apparently for the first time, that it "decided on the name SWISS GRILLS as an allusion to the … history" of the

---

[9]  In its ACR Brief, Applicant refers to the "supplemental" response as merely "more detailed" than the original. Applicant's ACR Brief at 5.

European specialty product the generic name of which it apparently considers "Confidential." Notwithstanding the confidentiality designation, Applicant contends that the specialty product is within the scope of the original "barbeques and outdoor grills" identification, and in a non-confidential submission has referred to the product as a grill; based on the information of record, it is clear it is a product typically used indoors. Accordingly, when we refer herein to this product as the specialty grill product, all such references are references to this European specialty grill for indoor use.[10] According to the "supplemental" response, "[t]he first meetings that Applicant held concerning the actual SWISS GRILLS product were in May 2012 and June 2012," approximately one year after the involved application's filing date, and in October 2012 Mr. Schroeter and a colleague traveled to a trade fair in Asia to search for manufacturers of the "specialty" products it intended to import.

In any event, when Applicant indicated in its original response to Interrogatory No. 1 that it "has offered grills for sale in association with the SWISS GRILLS trademark in Canada," those grills were not the specialty grill products referenced in the confidential "supplemental" and most recent response, but rather the standard "barbeques and outdoor grills" identified in the involved application. *Id.* Exs. T (Document Nos. WSL 00012-WSL00017) and U (responses to Second Set of

---

[10] While we disagree with Applicant that the common name of this product can be considered confidential, it is necessary to our decision to confirm that it is a cooking product and whether its primary use is indoors or outdoors. By adhering to Applicant's characterization of the product as a grill, we do not presuppose it would necessarily be classified as such, or that specimens showing use of the involved mark for such a product would be accepted by the USPTO to show use of the mark for "barbeques and outdoor grills."

13

Interrogatories No. 7 and Request for Admission Nos. 7 and 8).[11] In fact, in response to Opposers' Request for Admission No. 7, Applicant specifically admitted that the grills it sold in Canada and which were depicted in the documents it produced (Document Nos. WSL 00012-WSL00017) were not the "import specialty grills" in connection with which it eventually claimed it intended to use the SWISS GRILLS mark all along. *See also,* Applicant's ACR Brief at 4, 8-9. And although Applicant indicated in its response to Opposers' Second Set of Interrogatories that it first considered importing the specialty grill products in "September 2010," *id.* Ex. U (responses to Second Set of Interrogatories Nos. 2 and 3), *i.e.* approximately two years *before* Opposers brought this case, it did not reference these specialty grill products in its original response to First Set of Interrogatories No. 1, even though those responses were served in January 2013, well over two years after Applicant now alleges it first considered importing those products. Applicant instead originally referenced the standard "barbeques and outdoor grills" of the type it sold for 30 years in the United States under the NAPOLEON trademark and that it sold in Canada under the SWISS GRILL mark (rather than the applied-for SWISS GRILLS mark).

Applicant provides no explanation for waiting so long to disclose that its alleged intent was to use SWISS GRILLS for specialty indoor grill products rather than the standard outdoor grills for which it has long been known. Applicant claims,

---

[11] And, as Opposers point out, the traditional outdoor grills which Applicant sold in Canada bear Opposers' word mark SWISS GRILL, not Applicant's applied-for mark SWISS GRILLS.

however, that the specialty grill products identified for the first time in its "supplemental" response to First Set of Interrogatories No. 1 are "within the 'barbecue and outdoor grill' category in International Class 11." Schroeter Dec. ¶ 4. Chris Hartwig, who testified that he is "very familiar" with the specialty grill products, disagrees. He testified that they are "certainly not 'barbecues' and are also not 'outdoor grills' but rather are used" in a different location than barbeques and outdoor grills and are used "for melting cheese." Hartwig Reply Dec. ¶ 7. Mr. Warren, who has been in the hearth, patio and barbeque industry for approximately 34 years and is very active in the HBPA does not consider the specialty grill products "to be barbecues or outdoor grills." Warren Reply Dec. ¶ 17. Furthermore, Opposers introduced a number of third-party registrations of marks for the specialty grill products which Applicant now alleges are the "barbeques and outdoor grills" on which it actually intended to use the mark SWISS GRILLS. Hartwig Dec. ¶ 37 and Ex. X. Those registrations reveal that the specialty European products are identified, *inter alia*, as: "electric," "electric apparatus," "electric cooking appliances" and "electric cooking devices;" "kitchen apparatus for household purposes;" and "from Switzerland." The photos of the specialty grill products which Applicant produced in discovery look nothing like the typical outdoor grills that Opposers sell under the mark SWISS GRILL, Applicant sells in Canada under the same mark or that Applicant sells in the United States under the mark NAPOLEON. In fact, the products are revealed by the photos Applicant produced to have different designs, shapes, sizes and purposes than typical barbeques or outdoor grills.

To sum up the parties' arguments with respect to Applicant's identification of goods, Applicant contends that it has, since before the opposition commenced, had an intent to use its mark for a specialty grill product that is within the scope of its identified "barbeques and outdoor grills." By contrast, Opposers essentially contend that Applicant has, during the course of this proceeding, shifted its alleged intent to use the SWISS GRILLS mark for "barbeques and outdoor grills" of the type Applicant has sold in the United States under a different mark, and in Canada under the SWISS GRILL mark, to an alleged intent to use the SWISS GRILLS mark only for a specialty product that is not within the scope of the original identification.

## Standing

Opposers have established that at the time they filed their notice of opposition, they were using the mark SWISS GRILL for barbeques and outdoor grills. Accordingly, Opposers have a real interest in this proceeding and a reasonable basis for their belief that they will be damaged by registration of Applicant's mark for such goods. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ 1023 (Fed. Cir. 1999); *Lipton v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189-190 (CCPA 1982); *Automedx, Inc. v. Artivent Corp.*, 95 USPQ2d 1976, 1978 (TTAB 2010); *Giersch v. Scripps Networks, Inc.*, 90 USPQ2d 1020, 1022 (TTAB 2009) ("Petitioner has established his common-law rights in the mark DESIGNED2SELL, and has thereby established his standing to bring this proceeding."); *Syngenta Crop Prot. Inc. v. Bio-Chek LLC,* 90 USPQ2d 1112, 1118 (TTAB 2009) (testimony that opposer uses its

16

mark "is sufficient to support opposer's allegations of a reasonable belief that it would be damaged …" where opposer alleged likelihood of confusion). Having established their standing, Opposers may proceed with each of their two claims, to which we now turn.

## **Whether Applicant Had a Bona Fide Intent to Use SWISS GRILLS**

"Because a bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under [Trademark Act] Section 1(b) [15 U.S.C. § 1051(b)], the lack of such intent is a basis on which an opposer may challenge an applicant's mark." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 114 USPQ2d 1892, 1897 (Fed. Cir. 2015). Applicant's intent must be "firm," "demonstrable" with "objective evidence of intent" and "more than a mere subjective belief." *Id.* at 1897-98. We have long held, and the Federal Circuit recently affirmed, that our "determination of whether an applicant has a bona fide intention to use the mark in commerce is to be a fair, objective determination based on all the circumstances." *Id.*; *Lane Ltd. v. Jackson International Trading Co.*, 33 USPQ2d 1351, 1355 (TTAB 1994); *Commodore Electronics Ltd. v. CBM Kabushiki Kaisha*, 26 USPQ2d 1503, 1506 (TTAB 1993).

Opposers bear "the initial burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods." *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1587 (TTAB 2008). Opposers may meet this burden by establishing that there is an

"absence of any documentary evidence on the part of [Applicant] regarding such intent." *Commodore*, 26 USPQ2d at 1507.

If Opposers meets their burden, Applicant may "elect to try to rebut the opposer[s'] prima facie case by offering additional evidence concerning the factual circumstances bearing upon its intent to use its mark in commerce." *Id.* at 1507 n.11. However, Applicant's "mere statement of subjective intention, without more, would be insufficient to establish applicant's bona fide intention to use the mark in commerce." *Lane*, 33 USPQ2d at 1355.

Here, Applicant produced documentary evidence, but none of it predates the filing of its application, and, more importantly, none of it relates to Applicant's intent to use the mark SWISS GRILLS in the United States. Moreover, Applicant's discovery responses contain internal inconsistencies casting serious doubt on their credibility.

Even assuming that Applicant had a bona fide or good faith belief that the specialty grill products it eventually claimed it intends to sell under the applied-for SWISS GRILLS mark fall within the "barbeques and outdoor grills" identified in its application, Applicant has produced no documentary evidence supporting its asserted bona fide intent to use the mark in the United States prior to the filing date of its application.[12] Indeed, the 2012 listings or photographs of the specialty

---

[12] There is no evidence that Applicant ever offered anything like the specialty grill products, and other than visiting a trade show in China where the specialty grill products were displayed, there is no evidence that it took any steps to itself offer such products. *See M.Z. Berger*, 114 USPQ2d at 1899 ("The Board did consider Berger's past but noted that even though the iWatch mark was allegedly to be used with a 'smart' watch, Berger had

grill products manufactured or sold by nonparties under different marks than the here-involved mark SWISS GRILLS do not, in any way, evidence *Applicant's* intent to use the mark *SWISS GRILLS* in the *United States*, much less Applicant's intent to do so at the time it filed its application. Photographs of outdoor grills, entirely different products than those on which Applicant now claims it has an intent to use the mark, which are sold in Canada under the different mark SWISS GRILL, do not establish, without much more, Applicant's intent at the time it filed its application. And documents reflecting Applicant's visit to a trade show in China and brochures obtained there do not, without more, establish Applicant's intent to use the mark *SWISS GRILLS* in the *United States. See L'Oreal S.A. v. Marcon*, 102 USPQ2d 1434, 1443 (TTAB 2012) ("Applicant's very generalized and non-specific reference to licensing and outsourcing as potential strategies to bring the product to the market at an unspecified time in the future (accompanied by printouts of third-party websites of aloe vera suppliers) is, to say the least, woefully deficient in showing a bona fide intent to use the mark.").

Applicant is of course correct that documentary evidence of its intent to use its mark need not predate the filing date of the application. *Lane*, 33 USPQ2d at 1356. We stressed in *Lane*, however, that "the focus is on the entirety of the circumstances, as revealed by the evidence of record. In this case, we find that the circumstances support applicant's claim of bona fide intention." *Id.* In *Lane*, the post-filing documentary evidence "corroborated" other evidence of record of the

never made such a watch and took no steps following the application to develop such a watch.").

applicants' intent to use. For example, in *Lane*, testimony established that well prior to the filing date of the involved application, the applicant's predecessor had licensed a prior version of the mark at issue for use in the United States on products closely related to the products at issue; that Applicant later developed a business plan to internationally license the mark at issue for the products at issue; and that it engaged in communications and offered licenses consistent with that business plan. Here, by contrast, there is no evidence whatsoever that prior to its filing date Applicant ever corresponded with anyone, discussed licensing arrangements with anyone, developed a business plan or took any other steps to offer the specialty grill products anywhere. And while there is evidence that Applicant has offered typical outdoor grills in other countries since before its filing date, those are not the products in connection with which Applicant's "supplemental" response indicates it intends to use the involved mark. Furthermore, there is no evidence other than the involved application itself and Mr. Leach's testimony about an unproduced availability search that Applicant ever intended to use the mark SWISS GRILLS in the United States. Neither the application itself nor the unproduced trademark search suffice to establish Applicant's intent. *M.Z. Berger*, 114 USPQ2d at 1898.

In other words, Applicant is incorrect in contending that it has produced documents which relate to or establish its bona fide intent to use the mark in the United States for any products. Opposers have therefore met their initial burden, and Applicant's vague claims about communications, meetings or events which took place one or two years after filing the application, and which do not relate to the

20

SWISS GRILLS mark, the United States or grills or cooking products of any kind are little more than subjective claims of intention, rather than objective evidence.

Furthermore, Applicant's discovery responses and other evidence include inconsistencies which call into question the credibility of even its subjective claim to have had a bona fide intent to use the SWISS GRILLS mark in the United States. For example, Applicant filed its United Kingdom application for the SWISS GRILLS mark in 2009, and indicates in its "supplemental" response to Opposers' First Set of Interrogatories No. 1 that it "decided on the name SWISS GRILLS as an allusion to the [specialty European product's] history." Hartwig Dec. ¶¶ 13-15 and Exs. F, G, O. However, the only goods Applicant has sold in foreign countries under the SWISS GRILLS mark are not the specialty European products for which the SWISS GRILLS mark was allegedly adopted as an "allusion," but instead the traditional outdoor grills which are identified in the involved application and which Applicant has long sold, quite successfully, under the NAPOLEON trademark. *Id.* Ex. U (responses to Opposers' Second Set of Interrogatories Nos. 6 and 7 and responses to Opposers' Requests for Admission Nos. 7 and 8). In addition, Applicant claims on the one hand that it "has <u>never</u> professed a specific intent to use its SWISS GRILLS trademark in the U.S. for the 'traditional' barbecues/outdoor grills pictured in its Bates Nos. WSL00012-17," and on the other hand that its use of SWISS GRILL in Canada for exactly those "traditional" outdoor grills "constitutes probative evidence of the applicant's intent to use the opposed trademark in the

21

U.S." for those products. *Compare* Applicant's ACR Brief at 4 *with* Applicant's ACR Brief at 8-9.[13] Applicant cannot have it both ways.

After originally serving discovery responses consistent with an intent to offer NAPOLEON-type traditional outdoor grills under the SWISS GRILLS mark, despite the mark allegedly being adopted in 2009 as an "allusion" to specialty European products, Applicant materially and substantively altered its original discovery responses with the "supplemental" responses claiming that, all along, Applicant's intent was actually to use the mark for specialty European products. The sale of "traditional" outdoor grills in Canada under Opposers' SWISS GRILL mark is therefore not evidence of an intent to use the applied-for SWISS GRILLS mark for specialty European products in the United States.[14]

To be blunt, the record as a whole reveals that Applicant is unable to get its story straight. *See M.Z. Berger*, 114 USPQ2d at 1899 ("The Board was within its discretion to disagree with Berger's bottom-line position that it possessed a bona fide intent, given the inability of the Berger witnesses to pull together a consistent story on a number of issues ...."). In fact, its evolving and internally inconsistent story lines read more as after-the-fact rationalizations, than as credible evidence of a bona fide intent to use SWISS GRILLS in the United States for the identified

---

[13] Again, the traditional outdoor grills which Applicant apparently sold in Canada bear Opposers' word mark SWISS GRILL, not Applicant's applied-for mark SWISS GRILLS.

[14] Opposers have not provided sufficient evidence to establish that Applicant's true purpose in seeking registration of SWISS GRILLS was to thwart Opposers' entry into the United States market. However, we agree with Opposers that such an intent would not be "bona fide" or in "good faith" under Section 1(b) of the Act. *See Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 86 USPQ2d 1527, 1538 (D.C. Cir. 2008).

barbeques and outdoor grills. These inconsistencies, combined with "the general lack of documentary support" or other *objective* evidence of its bona fide intent to use the mark leads us to find that Applicant's intent at the time it filed the application was not a bona fide intent to use the mark in commerce. *Id.; see also*, *L.C. Licensing Inc. v. Berman,* 86 USPQ2d 1883, 1892 (TTAB 2008) ("The mere assertion of an intent to use the mark without corroboration of any sort, whether documentary or otherwise, is not likely to provide credible evidence to establish a bona fide intention to use the mark.").[15]

Applicant itself strenuously asserts that it "has never professed a specific intent to use its SWISS GRILLS trademark in the U.S. for the 'traditional' barbecues/outdoor grills pictured in Bates Nos. WSL00012-17." Applicant's ACR Brief at 4. This statement further buttresses Opposers' unrebutted showing that Applicant lacked a bona fide intention to use its mark for the goods identified in the application, which are the only goods at issue here. While Applicant apparently considers the identification of goods at issue, "barbeques and outdoor grills," to encompass the specialty grill products, there is also no evidence of Applicant's intent to use SWISS GRILLS even for those specialty grill products.[16]

---

[15] As indicated, Applicant's attendance at a trade show in China a year after filing the application does not establish product or manufacturer research related to offering in the United States the identified "barbeques and outdoor grills." Even if it did, Applicant claims that the general brochure and other evidence of its attendance at the trade show do not constitute Applicant's "business records." Schroeter Dec. Ex. 1.

[16] To be clear, there is no evidence that the specialty grill products fall within the identification of "barbeques and outdoor grills." Applicant has not moved to amend its identification of goods.

Accordingly, the opposition is sustained under Trademark Act Section 1(b) because at the time it filed the involved application, Applicant lacked a bona fide intent to use SWISS GRILLS for the products identified therein, barbeques and outdoor grills; and because Applicant's assertion that it had a bona fide intent to use the mark for a specialty grill typically used indoors is belied by the evidence.

## Priority and Likelihood of Confusion

There is no dispute that there is a likelihood of confusion between the parties' marks and therefore this claim boils down to priority. Indeed, Applicant admits that "Hartwig's SWISS GRILL Trademark so resembles Applicant's SWISS GRILLS trademark as to be likely to cause confusion, to cause mistake or to deceive." Answer ¶ 22.[17] Even if we were to agree with Applicant's assertion that its intended use of the mark is for the specialty grill product, and that such a product is within the scope of the identification of goods, we would still find a likelihood of confusion.[18]

---

[17]  Even without this admission, it is obvious that the virtually identical marks are confusingly similar, and the parties' "barbeques and outdoor grills" are identical, and not limited to any particular channel of trade or class of consumers, all of which weighs heavily in favor of a finding of likelihood of confusion. *Wilson v. DeLaunay*, 245 F.2d 877, 114 USPQ 339, 341 (CCPA 1957) ("It is evident that there is no material difference, in a trademark sense, between the singular and plural forms of the word 'Zombie' and they will therefore be regarded here as the same mark."); *In re Sarjanian*, 136 USPQ 307, 308 (TTAB 1962).

[18]  Not only does the identity of the parties' marks support a finding of likelihood of confusion, but it also reduces the degree of similarity of the goods necessary to find a likelihood of confusion. *In re Shell Oil Co.*, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993) ("even when the goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source"); *Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1650, 1661 (TTAB 2002); and *In re Opus One Inc.*, 60 USPQ2d 1812, 1815 (TTAB 2001). Thus, even if Opposers' goods are barbeques and outdoor grills, and Applicant's are specialty grill products typically used indoors which do not fall within the "barbeques and outdoor grills" identification, these goods are sufficiently related, given the virtually identical marks, for confusion to be likely.

Turning to priority, because Applicant has not introduced any evidence of use of SWISS GRILLS in the United States, its priority date is the filing date of its application, June 2, 2011. *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134, 1140 (TTAB 2013) ("for when an application or registration is of record, the party may rely on the filing date of the application for registration, *i.e.*, its constructive use date"); *Syngenta*, 90 USPQ2d at 1119 ("applicant may rely without further proof upon the filing date of its application as a 'constructive use' date for purposes of priority").

Applicant's arguments to the contrary notwithstanding, Opposers have established use of SWISS GRILL prior to Applicant's filing date, by virtue of their December 2010 sale of 322 units of barbeques bearing the SWISS GRILL mark to Opposers' distributor Warren Marketing Group for a total of $123,051.38. Hartwig Dec. ¶¶ 20, 21 and Exs. M, N; Hartwig Reply Dec. ¶¶ 3-5; Warren Reply Dec. ¶ 13. Indeed, as we stated in a case where a defendant made quite similar arguments:

> Brewer's arguments that these early sales by Raintree did not constitute public use of the mark because Children's Press was Raintree's distributor rather than an ultimate purchaser, that the sales and shipments to Children's Press were internal transactions which should be disregarded, and that Raintree's adoption was no (sic) followed by actual use are either untenable or unsupported by the facts. Raintree's evidence that Children's Press had no corporate relationship and no connection except for the arms-length distributorship agreement, is uncontroverted by any evidence by Brewer. The sale and shipment of products bearing a trademark to one's distributor is clearly sufficient to establish trademark rights.

*Raintree Publishers, Inc. v. Brewer*, 218 USPQ 272, 274 (TTAB 1983) (citations omitted). Similarly, here Applicant has no evidence contradicting the evidence of record that Opposers and Warren Marketing have an arms-length relationship. Hartwig Reply Dec. ¶ 6; Warren Reply Dec. ¶¶ 7, 14. And subsequent to this sale, Opposers and Warren Marketing continued to market and sell SWISS GRILL barbeques, quite successfully, with revenues exceeding $3 million. Hartwig Dec. ¶ 27; Warren Reply Dec. ¶ 11.

Accordingly, Opposers have established priority of use and likelihood of confusion, and the opposition is also sustained on that ground.


**Decision:**   The opposition is sustained under Trademark Act Section 1(b) on the ground that Applicant did not have a bona fide intention to use its mark at the time it filed the involved application, and under Trademark Act Section 2(d) on the ground that use of Applicant's mark would be likely to cause confusion with Opposers' mark.